

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 16, 2024.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-50591-CAG |
| | § | CASE NO. 22-50592-CAG |
| | § | (JOINTLY ADMINISTERED) |
| CHRIS PETTIT & ASSOCIATES, P.C. and | § | |
| CHRISTOPHER JOHN PETTIT | § | |
| | § | |
| Debtors. | § | CHAPTER 11 |

---

| | | |
|---|---|---|
| ERIC TERRY, in his capacity as CHAPTER | § | |
| 11 TRUSTEE for the DEBTORS | § | |
|     Plaintiff, | § | |
| v. | § | ADV. NO. 24-05034-CAG |
| | § | |
| FROST BANK, | § | |
|     Defendant. | § | |

### ORDER GRANTING DEFENDANT FROST BANK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE (ECF No. 20)

Before the Court is Eric Terry in his capacity as the chapter 11 trustee's ("Plaintiff") First

Amended Complaint (ECF No. 13),[1] Frost Bank's ("Defendant") Motion to Dismiss First

---

[1] "ECF" denotes electronic case number.

Amended Complaint (ECF No. 20), Plaintiff's Response to Defendant's Motion to Dismiss (ECF No. 29), and Defendant's Reply in Support of Motion of its Motion to Dismiss First Amended Complaint (ECF No. 41). The Court set the matter for a hearing and ultimately took the matter under advisement for a memorandum opinion. After considering the arguments made and counsels' pleadings, for the reasons stated in this Order, Defendant's Motion to Dismiss is **GRANTED WITH PREJUDICE**.

<u>JURISDICTION</u>

This Court has jurisdiction over this Motion to Dismiss pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) (administration of the estate) and (H) (proceedings to determine, avoid, or recover fraudulent conveyances). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for relief is Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding through Fed. R. Bankr. P. 7012 and Local Rule 7012.

<u>BACKGROUND AND PARTIES' CONTENTIONS</u>

As background, the Court held oral argument on November 6, 2024, during which the parties noted that the only remaining claim is an actual fraudulent transfer claim under state law that the Trustee is bringing forward under 11 U.S.C. § 544. This adversary proceeding surrounds two types of challenged transfers: commercial loan payments made between 2015 and 2017 (including a commercial real estate loan for the Pettit Law office building) and standard bank fees paid between 2015 and 2021 (including monthly account maintenance fees).

Defendant argues that TUFTA is a statute of repose that time-bars Trustee's claims, and the claim cannot be saved by a discovery rule. Defendant further argued that Trustee failed to: (1) allege facts to support the badges of fraud, (2) "connect the dots" between the identified transfer

and the actual fraud against a "triggering creditor," and (3) allege with particularity the transfer of assets to which the debtor has an equity interest. Although Defendant argues that Rule 9 of the Federal Rules of Civil Procedure ("F.R.C.P.") applies, Defendant posits that pleadings fail to satisfy even Rule 8(a). In Defendant's view, Trustee failed to allege a triggering creditor, which operates as a categorical bar against Trustee bringing this claim.

Trustee counters that none of its claims are time-barred by state law because the discovery rule applies. At the hearing, Trustee argued that the facts of this case were inherently undiscoverable due to the complexity of the case and that Trustee could not have discovered the fraud until Pettit plead guilty in September 2023. Trustee further argued that its cited "red flags" and Pettit's activities "across the Frost Accounts" sufficiently satisfy the general allegations required under Rule 8(a) for the following badges of fraud: (1) no receipt of reasonably equivalent value, (2) removal or concealment of assets, (3) insolvency and (4) transfers shortly before or after a substantial debt was incurred. ECF No. 13 at 12, ¶¶ 17, 23. In its First Amended Complaint, Trustee enumerates the following instances as "red flags" as factually supportive:

> Teaching Pettit how to pursue his scheme without being detected; Ignoring large volume transactions and wire transfers that would be considered Red Flags; Ignoring huge unexplainable discrepancies in Pettit's financials; Making frequent exceptions for Pettit that are not normally allowed or offered to other customers; Watching and following Pettit's instruction to remove money from IOLTA and Estate Management accounts for "case expenses" without any explanation of what the expense was for or what client the expense related to; Assisting Pettit from being detected while his accounts began to be overdrawn; Allowing Pettit to transfer funds from an IOLTA and Estate Management accounts to cover funding various wire transfers without any explanation whatsoever; Assisting Pettit in paying American Express bills through an IOLTA account, all while knowing the purpose of IOLTA accounts; Assisting Pettit in making payments from an IOLTA and Estate; Management accounts to pay for other overdrawn accounts Pettit held at Frost; Assisting Pettit in securing million-dollar loans even though Frost was aware of discrepancies in Pettit's financials—these loans would actually allow Pettit to maintain his commercial property for CP&A.

ECF No. 13 at 5, ¶ 8.

The following issues before the Court will be addressed, in turn, below: whether Trustee's allegations are (1) timely, (2) plead with sufficient specificity to satisfy the Federal Rules of Civil Procedure ("FRCP"), depending on if Rule 8(a) or 9(b) applies, and (3) precluded by the Court's prior ruling in *Armstrong*.

<u>DISCUSSION</u>

## I. Legal Standard

In the Fifth Circuit, when considering a motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." ***Thompson v. City of Waco, Texas***, 764 F.3d 500, 502–03 (5th Cir. 2014) (citing ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, (2009)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" ***Id.*** (quoting ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Iqbal***, 556 U.S. at 678; *see also* ***Twombly***, 550 U.S. at 570 (holding that the complaint must allege enough facts to move the claim "across the line from conceivable to plausible"). The determination of whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." ***Iqbal***, 556 U.S. at 679; *see also* ***Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys***, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) ("Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."). "On a motion to dismiss, the court may properly consider the documents attached to or incorporated by reference in the plaintiff's complaint, facts of which judicial notice may be

taken, and matters of public record." ***U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.***, 336 F.3d 375, 379 (5th Cir. 2003) (citing ***Lovelace v. Software Spectrum, Inc.***, 78 F.3d 1015, 1017–18 (5th Cir.1996)). "When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable." ***Tow v. Amegy Bank N.A.***, 498 B.R. 757, 765 (S.D. Tex. 2013).

## II.     Legal Analysis

"Actual intent fraudulent transfers are transfers made with actual intent to delay, hinder, or defraud creditors. The intent in question is determined by circumstantial evidence, usually with reference to what are called the 'badges of fraud.'" ***Arabella Petroleum Co., LLC v. Arabella Expl. Inc. (In re Arabella Petroleum Co., LLC)***, 647 B.R. 851, 868 (Bankr. W.D. Tex. 2022). Trustee seeks to avoid transfers made by Debtor to Defendant under § 548 and § 544, which permits Trustee to avoid fraudulent transfer under state law. Here, the operative state law is the Texas Uniform Fraudulent Transfer Act ("TUFTA"). TUFTA "was modeled on section 548, and in their application to the facts here, the two statutes are for all practical purposes, identical." ***Id.*** Courts "typically rely on circumstantial evidence, known as badges of fraud, to infer intent" because "direct evidence of actual intent is rarely available." ***Senior Care Centers, LLC, et al. v. Eric Wills (In re Senior Care Centers, LLC)***, No. 3:21-CV-01357-C, 2023 WL 6519756, at *20 (Bankr. N.D. Tex. Mar. 24, 2023). TUFTA provides a non-exclusive list of badges of fraud under § 24.005(b):

> 1. the transfer or obligation was to an insider;
> 2. the retained possession or control of the property transferred after the transfer;
> 3. the transfer or obligation was concealed;

4. before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

5. the transfer was of substantially all of the debtor's assets;

6. the debtor absconded;

7. the debtor removed or concealed assets;

8. the value of consideration received by the debtor was [less than] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

9. the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

10. the transfer occurred shortly before or shortly after a substantial debt was incurred; and

11. the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*See* TEX. BUS. & COM. CODE § 24.005(b) (stating that "consideration may be given, among other factors, to" the listed badges). "There is no clear authority on how many badges of fraud must be present to sufficiently establish actual intent under either TUFTA or the Bankruptcy Code." ***In re Senior Care Centers, LLC***, 2023 WL 6519756, at \*20. "Courts in Texas have struggled somewhat regarding just how many badges of fraud must exist to establish actual intent, although generally two or three badges of fraud is regarded as insufficient." ***Id.*** Courts must "consider all the factors and the 'totality' of the circumstances." ***Id.*** (citing ***Tow v. Speer***, No. 11-3700, 2015 WL 1058080, at \*11 (S.D. Tex. Mar. 10, 2015)).

        a.  *Timeliness*

             i.  <u>Section 546(a)</u>

Section 546(a) "is the Bankruptcy Code's statute of limitations for bringing avoidance actions." ***Texas E&P Operating, Inc. v. Krage & Janvey, L.L.P. (In re: Tex. E&P Operating, Inc.)***, No. 17-34386, 2023 WL 3012268, at \*8 (Bankr. N.D. Tex. Apr. 19, 2023). Section 546(a) of the Bankruptcy Code, titled "Limitations on avoiding powers," bars commencement of an action "under section 544, 545, 547, 548, or 553" of the Bankruptcy Code after the ***later*** of: (A) two years after entry of an order for relief (here, the petition in Pettit's case was filed on June 1, 2022, and

two years after the petition date would be <u>June 1, 2024</u>); or (B) one year after the appointment or election of the first trustee if such appointment or election occurs before the expiration of the period specified in subparagraph (A) (here, Eric Terry was approved as the chapter 11 trustee on June 24, 2022, which is after June 1, 2024, so <u>June 24, 2024</u> is the operative date under subsection (A)). Thus, the computed deadline here for commencing avoidance actions is June 24, 2024. The complaint in this adversary proceeding was filed on May 31, 2024, prior to the June 24, 2024 deadline, and thus is timely under Section 546(a) of the Bankruptcy Code.

### ii. <u>Discovery Rule</u>

Even if the statute of limitations were not satisfied here, when a party's fraudulent transfer claim is based on actual fraud, the one-year discovery rule "extends the time in which a claimant may file a claim by one year after the plaintiff knew or could have reasonably discovered the transfer and its fraudulent nature." ***Janvey v. Democratic Senatorial Campaign Comm., Inc.***, 712 F.3d 185, 195 (5th Cir. 2013). "The discovery rule provides a 'very limited exception to statutes of limitations,' when 'the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable.'" ***Irma Blas v. Rosen***, No. DR-18-CV-66-AM, 2019 WL 5199284, at *6 (W.D. Tex. July 16, 2019) (citing ***Wagner & Brown, Ltd. v. Horwood***, 58 S.W.3d 732, 734 (5th Cir. 2009)). An injury is considered "inherently undiscoverable" if "by its nature, [it is] unlikely to be discovered within the prescribed limitations period despite due diligence." ***Wagner***, 58 S.W.3d at 734–35. Generally, "[a]pplication of the TUFTA 'discovery rule' is a factual question generally inappropriate for resolution on a motion to dismiss." ***Janvey v. Willis of Colorado Inc.***, No. 3:13-CV-3980-N, 2014 WL 12670763, at *6 (N.D. Tex. Dec. 5, 2014).

Here, Plaintiff answered in the affirmative when the Court inquired whether the extent of Pettit's scheme made the nature of plaintiff's injury "inherently undiscoverable." This Court

agrees. The sheer scale and concealment of Pettit's fraud has been unseen in this district, resulting in his imprisonment. The Court finds that the discovery rule applies, and Trustee's claim is timely.

### iii. Section 546(a) Preempts TUFTA's Statute of Repose: Amend-Back Doctrine Does Not Apply Because the Claim is Timely

In Texas, TUFTA is an avoidance tool for transfers occurring "between two years and four years" pre-petition. *In re: Tex. E&P Operating, Inc.*, 2023 WL 3012268, at *10. TUFTA "imposes a four-year statute of limitations for filing a claim." *Cadle Co. v. Wilson*, 136 S.W.3d 345, 349 (Tex. App.—Austin 2004, no pet.). The Texas Supreme Court previously held in *Nathan v. Whittington* that Section 24.010 is a statute of repose. 408 S.W.3d 870, 874 (Tex. 2013) ("Considering the actual language of TUFTA section 24.010 and the Commissioners' comments to UFTA section 9 on which it is modeled, we agree . . . that it is a statute of repose, rather than a statute of limitations."). A statute of repose differs from a statute of limitations in its "purpose" and "the actor[s]" it targets. *O'Cheskey v. CitiGroup Global Markets, Inc. (In re Am. Hous. Found.)*, 543 B.R. 245, 256 (Bankr. N.D. Tex. 2015). "[W]hile statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009).

The statute of repose "extinguishes actual-intent fraudulent-transfer claims unless brought 'within four years after the transfer was made or the obligation was incurred, or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.'" *Jones v. Dyna Drill Techs., LLC*, No. 01-16-01008-CV, 2018 WL 4016413, at *9 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018, no pet.) (citing TEX. BUS. & COM. CODE § 24.010(a)(1)). "The statute of repose is an affirmative defense on which the defendant has the burden of proof on

all elements." *Id.* at 10. A defendant arguing that the claim is extinguished by the statute of repose has the burden to demonstrate "when the transfer was or reasonably could have been discovered." *Id.* "Statutes of repose make the filing of suit within a specified time a substantive part of the plaintiff's cause of action" and this "cannot be over-ridden by a procedural rule such as Rule 15 to save a late-filed and thus, extinguished claim." *In re ACIS Capital Management L.P.*, No. 18-30264, 2024 WL 4500804, at *16 (Bankr. N.D. Tex. Oct. 15, 2024).

The extinguishable theory of a statute of repose is in direct conflict with Section 546(a), which is designed "to give the trustee 'some breathing room' to determine which claims to bring under section 544." *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 677 (S.D. Tex. 2007). Conflict preemption arises "if either complying with both the state and federal statutes is impossible or if the state law is an obstacle to Congress's intent." *Id.* "Without its time extension, a trustee might be unable to assert claims if the state-law limitations period is exceptionally brief." *Id.* The "overwhelming majority of courts that have been asked to decide whether section 546(a) preempts a state statute of repose have concluded that it does under conflict preemption." *Bayou Steel BD Holdings, L.L.C. et al. v. Black Diamond Capital Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 642 B.R. 371, 385 (Bankr. D. Del. 2022). For example, in *Gibbons v. First Fidelity Bank, N.A. (In re Princeton-New York Investors, Inc.)*, a New Jersey bankruptcy court determined that the "time to bring the action under the New Jersey statute of repose had not expired as of the debtor's petition date, [and] that the trustee complied with section 546(a), which preempted the state statute, and [thus] the action was therefore timely." 199 B.R. 285, 297 (Bankr. D.N.J. 1996), aff'd, 219 B.R. 55 (D.N.J. 1998); *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. at 385. In making this decision, Judge Gambardella found that the repose statute "present[ed] an obstacle to the objectives of Congress in enacting the Bankruptcy Code" because Congress

intended to provide trustees "some breathing room to determine what claims to assert" and "maximiz[e] the bankruptcy estate for the benefit of creditors." *In re Princeton-New York Invs., Inc.*, 199 B.R. at 297. Other courts have reasoned and held similarly. *Rund v. Bank of Am. Corp. (In re EDP Inv. Co.)*, 523 B.R. 680, 691–92 (BAP 9th 2015); *In re Am. Housing Foundation*, 543 B.R. at 259 n.15; *Smith*, 365 B.R. at 676–79. Recently, Judge Owens presiding over a Delaware bankruptcy court adopted the above-referenced cases' reasoning, concluding that § 546(a) preempted a Delaware statute of repose. *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. at 385.

One contrasting decision is *Committee of Unsecured Creditors of Phar-Mor, Inc. v. Action Indus., Inc. (In re Phar-Mor Secs. Litig.)*, which is a Western District of Pennsylvania bankruptcy court decision. 178 B.R. 692 (W.D. Pa. 1995). The court held that § 546(a) did not preempt an Ohio statute that barred all claims against a decedent's estate not presented within one-year of the decedent's death. The reasoning was that "probate matters are the states' exclusive concern and the states' interest in regulating probate estates overrides congressional intent to provide to provide a bankruptcy trustee with 'breathing room.'" *Id. In re Phar-Mor* is distinguishable from the case at bar. Probate matters are traditionally left to states' exclusive control whereas fraudulent transfer matters are controlled by *both* state fraudulent transfer statutes and the Code. *Smith*, 365 B.R. at 678–79. Given this conflict, § 24.004 must give way to § 546(a) of the Bankruptcy Code to further Congress's interest in enacting § 546(a)—providing the trustee with time to identify valuable causes of action for the benefit of creditors. This Court adopts the reasoning in Judge Owens's opinion, and finds that TUFTA's repose statute is preempted by § 546(a) of the Code.

b.  *Trustee Failed to Overcome the Threshold for Rule 9(b) in Pleading the Badges of Fraud*

The parties next quarrel over whether this Court need apply Rule 8(a) or 9(b) to the First Amended Complaint to determine whether it survives Defendant's Motion to Dismiss under Rule 12(b)(6). In its Motion to Dismiss, Defendant argues that Trustee's actual fraudulent transfer claims pursuant to § 24.005(a)(1) and § 544 require satisfying the higher pleading standard of particularity under Federal Rule of Civil Procedure 9(b). In its Reply, Plaintiff argues the opposite, positing that its generalized pleadings satisfy Rule 8(a) and Rule 9(b) does not apply.

Specifically, Defendant contends that Trustee has not sufficiently alleged facts for this Court to infer that Defendant acted with fraudulent intent through reciting a list of "red flags" coupled with Pettit's activities "across the Frost Accounts." (ECF No. 41 at 8). Defendant argues that Trustee must instead demonstrate "well-pleaded facts" and that Trustee's allegations of "red flags" are "not probative of fraudulent intent." (ECF No. 20 at 24). Defendant states that "overdrafts and returns 'across the Frost accounts' at unspecified times are not evidence of Pettit or CP&A's fraudulent intent with respect to any individual transfer . . . nor are payments, transfer, and teller withdrawals from the IOLTA and Estate Management Accounts, again at unspecified times, as those funds belong to CP&A's clients." *Id.* Finally, Defendant quarrels with the emails excerpted in the pleadings spanning three days in June 2015 because "those emails show only that a Frost banker sought and received a business justification for cash withdrawals, asked that client names be included on the memo line of withdrawals, if possible, and requested that currency transaction reports be filed in connection with cash withdrawals. Nothing more." *Id.*

Trustee argues that it is "not required to plead such intent with additional particularity" and that its "pleading of at least four badges of fraud under TUFTA" is "sufficient at the pleading stage

11

to state a claim for intentional fraudulent transfer." (ECF No. 29 at 3). Trustee notes that the Fifth Circuit "has never ruled on whether Rule 9(b)'s heightened pleading standard applies to fraudulent transfer claims" and "district courts have gone both ways on the issue." (ECF No. 29 at 17–18). Trustee argues that even if this Court were to apply Rule 9(b)'s pleading standard, Trustee is still not required to plead intent with such particularity because Rule 9(b) states that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." (ECF No. 29 at 19). Thus, in Trustee's view, its recitation of the badges of fraud alleged and the attached exhibits are "more than sufficient to plead debtors' intent." (ECF No. 29 at 19).

Trustee also cites to cases decided in the Fifth Circuit in which a showing of three, four, and five badges of fraud were sufficient at the pleading stage for a court to find that fraudulent intent was plead. (ECF No. 29 at 20); *see Boyd v. Four Dominion Drive, LLC (In re Boyd)*, No. 11-51797, 2012 WL 5199141, at *9 (Bankr. W.D. Tex. Oct. 22, 2012) (determining four badges of fraud was sufficient to overcome a defendant's 12(b)(6) motion); *see also Texas Rangers Baseball Partners v. Texas Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 498 B.R. 679, 711–12 (Bankr. N.D. Tex. 2013) (stating that three badges of fraud is enough to establish fraudulent intent and satisfy Rule 9(b)).

"To establish a claim under § 24.005 of TUFTA, a plaintiff must prove that '(1) he is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19-CV-1594-D, 2020 WL 554583, at *11 (N.D. Tex. Feb. 4, 2020). Fraudulent transfer claims under this section require "actual intent" and "are likely subject to Rule 9(b)." *Id.*; *see Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018) (explaining that, despite

an open question in the Fifth Circuit, multiple federal Texas courts have applied the enhanced pleading requirements of Rule 9(b) to actual intent of a debtor). Trustee is correct that the Fifth Circuit in *Life Partners Holdings, Inc.* determined that it did not need to decide the question of whether Rule 9(b)'s requirements applied because the complaint in that case satisfied both Rule 8 and 9's requirements. 926 F.3d at 118.

"Rule 9(b) imposes a heightened pleading standard in cases where the plaintiff alleges fraud or mistake: particularity." *In re Northstar Offshore Grp., LLC*, 616 B.R. at 732. "[U]nder Rule 9, the Trustee 'must plead the who, what, when, where, and why as to the fraudulent conduct.'" *Id.* (citing *In re Life Partners Holdings*, 926 F.3d at 117). Defendant primarily argues that "Trustee's badges of fraud are not supported by well-pleaded facts and, like the Red Flags, are not probative of fraudulent intent with respect to each challenged transfer." (ECF No. 20 at 24).

While Trustee correctly highlighted the disagreement between Texas federal courts, this Court applies Rule 9(b)'s heightened pleading standards to actual fraudulent transfers. *See In re Brown Medical Center, Inc.*, 552 B.R. at 167; *see also In re NE 40 Partners, Ltd.*, 411 B.R. 352, 364–65 (Bankr. S.D. Tex. 2009) (applying Rule 9(b) requirements to fraudulent transfer claims). This is because "Rule 9 applies whenever fraud is an essential part of the claim. In an actual fraudulent transfer case, fraud is an essential element. The Fifth Circuit has [also] applied this reasoning in the § 523 fraud context." *In re Northstar Offshore Group, LLC*, 616 B.R. at 733 (citing *AT & T Universal Card Serv. v. Mercer (In re Mercer)*, 246 F.3d 391, 401–02 (5th Cir. 2001)). This Court sees little reason to depart from this line of thinking and agrees with its sister Texas bankruptcy courts that imposing a Rule 9 pleading standard is in line with how federal courts have traditionally analyzed fraud claims. Applying Rule 9(b) to Trustee's Complaint, the Court now analyzes each Trustee's cited badges of fraud, in turn, below.

13

1.  Incurrence of a Substantial Debt

In its First Amended Complaint, Trustee argues that the "transfers occurred shortly before or shortly after a substantial debt was incurred" and cites to Exhibits D and E of the Complaint. (ECF No. 13 at 12). Defendant counters that Trustee offers "nothing more than a threadbare recital of a badge that is mentioned in TUFTA" and needs to draw out the connection between the badge and the exhibits cited. (ECF No. 41 at 12). Trustee does not respond to Defendant's argument in its Motion to Dismiss. The Court agrees with Defendant that Trustee's recitation of this badge of fraud is threadbare. Trustee's mere recitation of this badge of fraud and citation to an exhibit does not sufficiently "connect the dots" for the Court to draw an inference that this badge has satisfied the heightened plausibility threshold sufficient for Rule 9(b).

2.  Insolvency

Trustee's First Amended Complaint alleges that the "Debtors transferred the Loan Payments to [Defendant] for less than reasonably equivalent value, and those transfers were made when the Debtors were insolvent or the transfer rendered it insolvent." (ECF No. 13 at 13). Trustee further alleges as follows:

> Debtors were insolvent at the time of the Bank Fees and Loan Payments as they were unable to pay their debts as they became due. For instance, from 2015 through 2021, the total liabilities of CP&A vastly exceeded the monies Debtors had to pay those obligations, even if the monies in the trust accounts, estate management accounts, and personal and operating accounts are all considered sources for paying those liabilities (as Pettit often did). The records reveal that from 2015 through 2022, Debtors' liabilities exceeded their assets, and they did not have the ability to pay their debts as they became due. (*See* "Exhibit E" – Claims and Liabilities in Excess of Bank Account Balances.) For instance, Debtors' liabilities exceeded their liquid assets by more than $17 million in 2014, more than $19 million in 2015, more than $21 million in 2016, more than $24 million in 2017, more than $32 million in 2018, more than $39 million in $2019, more than $100 million in 2020, more than $116 million in 2021, and more than $268 million in 2022. As such, the

14

transfers at issue resulted from conduct undertaken after the Debtors began to encounter financial difficulties.

(ECF No. 13 at 11).

In its Motion to Dismiss, Defendant argues "the only facts that the Trustee presents to establish Debtors' insolvency are the figures in the three tables in Exhibit E. According to the Trustee, Exhibit E shows that Debtors (collectively) were insolvent 'from 2015 through 2022' because the total dollar amounts of the 'claims/liabilities' listed in the third table exceeded Debtors' total 'known' bank account balances." (ECF No. 20 at 14). Defendant states, that "although the Trustee at least attempts to plead insolvency, the factual allegations he marshals fall short of the plausibility threshold" because:

> simple arithmetic is ultimately the mathematical equivalent of the Trustee's original, conclusory allegation that "[t]he Debtors were insolvent at the time the Fees and Loan Payments were transferred to Frost." Compl. ¶ 23. The Trustee's accounting of Debtors' "assets" is facially incomplete, as it is limited to bank account balances—"known" ones, at that—and includes no other property and no means of determining "fair valuation," and the Amended Complaint contains no facts to support the Trustee's determination of "debts" at the designated times. *See* FAC Ex. E. There is no indication from the pleadings of how the "claims/liabilities" in the Trustee's table were—or could be—assigned to discrete dates so as to permit a calculation of Debtors' debts relative to their assets at a fixed point in time. Nor, for that matter, can the Trustee's theory be reconciled with his acknowledgement that CP&A was operational, with a staff of "at least 20 people including lawyers, paraprofessionals, and office personnel," throughout the period of supposed insolvency.

(ECF No. 20 at 14).

At the hearing, Defendant noted that insolvency is generally not a probative badge of fraud. Defendant argued that Trustee, through Exhibit A, merely added up monies on a particular date of each year that existed in Pettit's bank accounts and compared that with a series of claims, but this is not a balance sheet. Defendant criticizes Trustee's strategy as merely showing balances in bank accounts of the debtor on one day of each year—not that debtors were failing to pay debts as they became due. Defendant claims that Trustee would have needed to specifically plead specific debts

not being paid at the time the debts became due through demonstrating that the failure to pay coincided with the timing of the transfer. Defendant states Trustee needed to allege this through a balance sheet to show liabilities exceeded the assets at fair market value at the time of the transfer.

TUFTA provides that a "debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Tex. Bus. & Com. Ann. § 24.003(a). The Code defines insolvency as "the financial condition such that the sum of such . . . debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). The Court has "broad discretion when considering evidence to support a finding of insolvency." ***Matson v. Strickland (In re Strickland)***, 230 B.R. 276, 283 (Bankr. E.D. Va. 1999); ***Official Emp't-Related Issues Comm. of Enron Corp. v. Arnold (In re Enron Corp.)***, 318 B.R. 655, 662 (Bankr. S.D. Tex. 2004). Trustee may prove this badge of fraud "by any appropriate means" at the "time of the transfer" but must offer proof above "mere speculative evidence of the insolvency." ***Id.*** The Court, using its discretion, agrees with Trustee that its current attached exhibits are sufficient to demonstrate that the sum of the debtor's debts were greater than all of the debtor's assets at a fair evaluation. Defendant is incorrect in its assertion that insolvency must be demonstrated through a balance sheet, considering other Texas bankruptcy courts have explained that simple bankruptcy schedules are sufficient to prove a debtor's insolvency at the time of the transfer. ***In re Tegeler***, 586 B.R. at 682. Thus, Trustee has sufficiently demonstrated this badge of fraud to survive a 12(b)(6) motion to dismiss.

3. "Concealment of Assets" Badge

In its First Amended Complaint, Trustee argues that the "Debtors removed or concealed assets" through "comingling personal and CP&A funds with monies in the Other Accounts." The First Amended Complaint cites the following as support for this badge:

> By way of example, before and during the time of the Bank Fees and Loan Payments, more than $40,000 of personal and CP&A funds were deposited into the IOLTA accounts, more than $400,000 of personal and CP&A funds were deposited into the Estate Management Account, and more than $80,000 of personal and CP&A funds were deposited into the Money Market Account. These and other transactions show Pettit's actual intent to hinder, delay, or defraud any entity to which he was or became indebted.

(ECF No. 13 at 10). Defendant argues that relying on commingling only for this badge is improper, and "a plain reading of the allegations, taken at face value reveals there is no allegation in the Complaint that the Debtors were squirreling away client funds to offshore accounts, or otherwise acting to prevent their disclosure. Plainly, comingling does not equate to concealment." (ECF No. 41 at 13). At the hearing, the Court questioned Defendant on what Trustee would have needed to plead instead. Defendant explained that Trustee needed to argue that Defendant hid the transfers, that there was some sort of misrepresentation to law firm customers that there would not be a loan to finance the office building, or perhaps argue a mischaracterization in the books and records of Defendant.

Defendant further takes issue with Trustee's citation to *Taylor v. Trevino* because that case involves an elaborate illegal commission scheme and a concerted effort by the company to hide the nature of bonus structure payments from customers. *See Taylor v Trevino*, No. 3:20-CV-0393-D, 2021 WL 4822018, at *3 (N.D. Tex. Oct. 15, 2021) (a demonstration of less than four to five badges of fraud "may be insufficient to establish the existence of fraudulent intent"). At the hearing, Defendant argues that there is no indication that any auditor or customer was looking at

17

Frost Bank accounts and was somehow fooled by the fact that money was deposited into the account.

This badge of fraud exists when a transferor or transferee "concealed the nature and existence of transfers from Debtor's creditors at the time the transfers were made." *Maxus Energy Corp., et al. v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 517 (Bankr. D. Del. 2022). "Timing" and "sufficiency" are "certainly questions of fact which necessitate evidence" for a trial court evaluating this badge of fraud. *Id.* There is no caselaw to indicate that pleading comingling, without any additional connective fact pattern, is sufficient to satisfy pleading the concealment badge of fraud. The Court agrees with Defendant that Trustee has failed to satisfy pleading the concealment badge of fraud.

### 4. "Less Than Reasonably Equivalent Value" Badge

Trustee next argues that the "Bank Fees and Loan Payments were made to Frost, which Frost retained, benefitted from, or used. Debtors received no value (or reasonably equivalent value) for the Loan Payments . . . Trustee has no records to suggest the Debtors received funds for the alleged loan or executed loan agreements governing the Loan Payments." (ECF No. 13 at 11). In its Motion to Dismiss, Defendant argues that the "alleged lack of reasonably equivalent value is inapplicable to the Loan Payments, as they were made in satisfaction of antecedent debt . . . and there is no factual basis in the pleadings for an inference that the Bank Fees involved less than equivalent value for the services rendered." (ECF No. 20 at 25). Defendant argues in its Reply that failure to satisfy this badge can outweigh any indicia of fraud, and that "nothing in the Complaint

gives rise to the reasonable inference that the Bank Fees involved anything less than reasonably equivalent value." (ECF No. 41 at 10).

Defendant further cites to *Cook v. Roberts (In re Yahweh Ctr., Inc.)*, No. 16-04306-5, 2019 WL 1325032 (Bankr. E.D.N.C. Mar. 22, 2019) to demonstrate that other courts have found a trustee failed to plausibly allege lack of reasonably equivalent value regarding bank fees if the trustee does not allege that any fee was inconsistent with a contractual relationship, improper, or did not compensate a bank for a service provided to the debtor in connection with the accounts. Drawing on this case, at the hearing, Defendant argued that these loan payments were made for actual loans in the ordinary course of business and pointed to the fact that Trustee has not alleged that the repayment of the loans were inconsistent with either the loan agreement or the deposit agreement. Defendant contends that both agreements were standard form commercial agreements and Trustee has not alleged that Defendant did not properly compensate through its standard service and providing value to the debtor. In Defendant's view, Trustee would have needed to argue that the service provided was unreasonable, non-market, or above and beyond what Defendant typically charges in the ordinary course of business. The Court agrees.

Upon review, Trustee's employed style of pleading for this particular badge is comparable to the pleading in *Angel v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 756 (Bankr. E.D.N.C. 2010). In that case, the complaint alleged that the transferors were insolvent on the date of the relevant transfer and the transferors "received less than equivalent value in exchange from the defendant for such fraudulent transfer." Essentially, the allegations were a "mirror the elements of § 548(a)(1)(B)." *Id.* The bankruptcy court found this "mirroring" was insufficient, noting:

> The Complaint provides no factual allegations to explain why [debtor] did not receive reasonably equivalent value for the various fees. There is no allegation that any fee was not consistent with the contractual relationship or that any fee was

improper, unreasonable, or did not compensate [debtor] for a service provided . . . in connection with the accounts . . . there is no copy of any account agreement. There is simply no information other than that the fees were charged . . . the trustee fails to support such allegations with factual assertions other than dates, amounts, and names of transferees included in Exhibit B. Missing from the Amended Complaint is an identification of the consideration received by each transferor, information as to why the value of such consideration was less than the amount transferred, and facts supporting the debtors' insolvency at the time of the transfer. In the absence of such factual assertions, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard.

*Id.*

Trustee's First Amended Complaint presents the same issue here. The First Amended Complaint first errs in that it mirrors the elements of an actual fraudulent transfer without sufficient detail to state a plausible claim that the debtor did not receive reasonably equivalent value. Next, the Complaint fails to cite cases supporting Trustee's conclusion that ordinary bank fees are not supported by reasonably equivalent value. As a result, the Court agrees with Defendant that this badge is not sufficiently plead.

In sum, Trustee has failed to sufficiently plead three out of the four badges of fraud. "As a matter of law, a finding of fraudulent intent cannot properly be inferred from the existence of just one 'badge of fraud.'" ***Ingalls v. SMTC Corp. (In re SMTC Mfg. of Texas)***, 421 B.R. 251, 300 (Bankr. W.D. Tex. 2009). Thus, Trustee has failed to plead the badges of fraud such that the Court could make a finding of fraudulent intent.

### c. *Ponzi Presumption Application*

Trustee argues that "it is a debatable whether the Trustee needs to plead and prove the Debtors' intent at all" because "the existence of a Ponzi scheme creates a presumption that a transfer is made with actual intent to defraud the transferor's creditors." (ECF No. 29 at 18, n. 6). Trustee notes that while the Fifth Circuit has not addressed application of a "Ponzi-scheme

presumption" to a "Ponzi-like scheme," this Court could apply the Ponzi-scheme presumption to the facts here.

Defendant counters that Trustee cannot use a "Ponzi-like scheme" presumption in a "transparent attempt to ease his pleading burden." (ECF No. 41 at 13). Defendant notes that "Trustee stops short of calling for the application of that presumption—and for good reason: It is limited to classic Ponzi schemes . . . and courts have refused to extend it to 'Ponzi-like schemes.'" (ECF No. 41 at 13). Defendant argues that if this Court were to apply the Ponzi scheme presumption to a Ponzi-like scheme, thus "bypassing proof of the required subjective intent—the core element of a fraudulent transfer action based on actual fraud—would be a radical departure from the statute." *Id.*

The Fifth Circuit has defined a Ponzi scheme as a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." ***Janvey v. Alguire***, 647 F.3d 585, 597 (5th Cir. 2011) (quoting BLACK'S LAW DICTIONARY 1198 (8th ed. 2004)). Pettit and CP&A did not operate as a Ponzi scheme. It did, however, engage in extensive fraudulent activity, but it did not operate as an investment scheme whereby money from later investors was used to pay new investors. Trustee even admits that the Department of Justice did not explicitly call Pettit's activity "a Ponzi scheme" but instead a "Ponzi-like scheme." Contrary to Trustee's assertion, the Court will not extend the Ponzi-scheme presumption to Ponzi-like frauds.

Further, the Fifth Circuit's holding in ***In re Life Partners Holdings, Inc.***, 926 F.3d 103, 112 (5th Cir. 2019) "stands for the proposition that a plaintiff need not plead which transferor made a particular transfer under a fraudulent transfer claim when the transferors operated a Ponzi scheme. It did not extend the Ponzi-Scheme Presumption to other fraudulent enterprises." ***In re***

21

***Reagor-Dykes Motors, LP***, No. 18-50214-RLJ-11, 2022 WL 2046144, at *6 (Bankr. N.D. Tex. June 3, 2022). The Court agrees with Defendant that a Ponzi-like scheme is distinguishable from a Ponzi scheme, and thus declines to apply the Ponzi scheme presumption so that Trustee can circumvent properly pleading actual fraud.

### d. Triggering Creditors

Defendant argues that Trustee has "failed to adequately identify triggering creditors" and thus, has not established standing. (ECF No. 20 at 26). Defendant explains that "Trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim who could avoid the transfer in question under TUFTA" but the "Amended Complaint lacks well-pleaded factual content supporting his conclusory allegations." (ECF No. 20 at 26). A critical error is:

> Exhibit D does not match any of the 100-plus triggering creditors with either the Pettit estate or the CP&A Estate, and so leaves the Court with no means of ascertaining which, if any, of the triggering creditors could have avoided a transfer by each Debtor and also held an unsecured claim against each Debtor that was allowable under Section 502 as of the Petition Date.

(ECF No. 20 at 26). At the hearing, Defendant stated that failure to plead a triggering creditor is a complete bar to recovery and Defendant needs this plead so it can determine whether the alleged creditor is an insider. Defendant argues the claims register is not sufficient.

Trustee notes:

> Some bankruptcy courts have held that although a trustee must show the existence of an actual secured creditor holding an allowable unsecured claim, a so called 'golden creditor,' the trustee 'need not specifically identify the creditor by name; as long as the trustee establishes that such unsecured creditors exist, he can assume the mantle of any of them.

(ECF No. 29 at 21). Trustee explains that the First Amended Complaint "identifies over one hundred triggering creditors by name, including the dates their respective claims arose" and that

these triggering creditors hold unsecured claims against the debtors before or within a reasonable time after the transfer of the Bank Fees and Loan Payments. (ECF No. 29 at 22). Trustee cites to *The Heritage Org. v. Kornman, et al. (In re The Heritage Org., L.L.C.)*, 413 B.R. 438, 459 (Bankr. N.D. Tex. 2009) which explained that Trustee "need not specifically identify the creditor by name; as long as the trustee establishes that such unsecured creditors exist, he can assume the mantle of any of them." Trustee further notes that Defendant is put on notice that the triggering creditors exist and identified by name and in most instances, a specific claim date, thus satisfying the requirements to invoke section 544. (ECF No. 29 at 22).

"A bankruptcy trustee can bring a fraudulent transfer action under section 544(b) only if there is a 'triggering' unsecured creditor that could have brought such an action when the bankruptcy petition was filed." *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, 479 B.R. 405, 410 (N.D. Tex. 2012). This "means that a bankruptcy trustee's rights to avoid a fraudulent transfer 'are derivative of an actual unsecured creditor's rights.'" *Id.* (citing *Smith*, 365 B.R. at 659). As noted by the Fifth Circuit,

> If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use § 544(b) to step into the shoes of that creditor and 'avoid' the debtor's transfer. Although the cause of action belonged to one creditor, any property the trustee recovers becomes estate property and is divided pro rata among all general creditors. The trustee may recover the full extent of the fraudulently transferred property on the basis of one creditor's claim. In other words, an entire transfer may be set aside even though the creditor's claim is nominal.

*Matter of Mirant Corp.*, 675 F.3d 530, 534 (5th Cir. 2012) (quoting *In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010)) (emphasis removed). "Because fraudulent conveyance statutes were designed to protect creditors from secret transactions by debtors, the same rules should not apply when the transaction is made public." *U.S. Bank Nat. Ass'n*, 479 B.R. at 412. Here, the unsecured creditors

listed on the claims register are sufficient triggering creditors to put Defendant on sufficient notice of the claims being asserted and the relief sought against them.

> e. *Judicial Estoppel and Issue Preclusion Bar Trustee's Claims that IOLTA Funds, and IOLTA Funds Only, Are Debtor's Property*

Defendant begins by addressing the Other Accounts, arguing that issue preclusion and judicial estoppel bar Trustee's effort to relitigate his ability to prosecute TUFTA claims with respect to IOLTA funds. (ECF No. 20 at 21). Defendant notes that this Court already determined "by final order that one subset of those accounts—the IOLTA accounts—were never property of the Debtors" and this Court should extend "the same logic underlying the Denial Order" and "appl[y that] to the funds in the Other Accounts." (ECF No. 20 at 22). Defendant's reasoning hinges on Trustee's definitions in the First Amended Complaint in which Trustee "deliberately group[ed] the IOLTA accounts, the Estate Management Accounts, and the other two accounts together as Other Accounts, [thus signaling] that the accounts share an essential feature that sets them apart from the Personal Accounts and the CP&A Accounts—ownership of the funds by CP&A's clients as opposed to the Debtors." (ECF No. 22). "This is fatal to the Trustee's fraudulent transfer claims with respect to transfer from the Other Accounts . . . ." (ECF No. 20 at 22).

Trustee counters that the Court's prior ruling in *Armstrong* does not apply because Trustee has not specifically alleged that all funds in the IOLTA and "Other Accounts" are part of the debtors' estate. (ECF No. 29 at 16). Trustee states, "To the contrary, the Trustee has pled that Debtors comingled funds from Pettit and CP&A's personal accounts into the Other Accounts and used those funds to make the fraudulent Loan Payments" and thus, "is entitled to recover those Pettit and CP&A funds comingled into the Other Accounts and fraudulently transferred to Frost." (ECF No. 29 at 16).

24

In its First Amended Complaint at ECF No. 13, Trustee argued as follows:

Bank Fees and Loan Payments are transfer of property in which the Debtors owned an interest. Bank Fees were charged from **Pettit's personal accounts (Acct. Nos. X0599; X4722; X5713; and X8540, the "Personal Accounts") and CP&A accounts (Acct. Nos. X0610 and X9796, the "CP&A Accounts")**. Other accounts from which Bank Fees were charged include ***IOLTA accounts*** **(Acct. Nos. X2141 and X4777), an account for the CJCP Trust (Account No. X2685), the Estate Management Account (Acct. No. X4998), and a Money Market Account (Acct. No. X5705) (collectively, the "Other Accounts")**. The Loan Payments were made from Pettit's personal and CP&A accounts, and IOLTA account, and the Estate Management Account. Pettit repeatedly and substantially removed and concealed assets by commingle personal and CP&A funds with monies in the Other Accounts. By way of example, before and during the time of the Bank Fees and Loan Payments, more than $40,000 of personal and CP&A funds were deposited into the IOLTA accounts, more than $400,000 of personal and CP&A funds were deposited into the Estate Management Account, and more than $80,000 of personal and CP&A funds were deposited into the Money Market Account. These and other transactions show Pettit's actual intent to hinder, delay, or defraud any entity to which he was or became indebted.

ECF No. 13 at 10, ¶`17 (emphasis added).

Trustee is partially correct. The Court's prior ruling in *Armstrong* was narrowly tailored to finding that the IOLTA account-related claims only belonged the *Armstrong* plaintiffs and not Trustee. To parse the First Amended Complaint, in paragraphs 17 through 20, Trustee lists eleven accounts for the fraudulent transfer action including: (1) four personal accounts, (2) two CP&A accounts, (3) two IOLTA accounts, (4) one account for the CJCP Trust, (5) one Estate Management Account, and (6) one Money Market Account. While *Armstrong* bars Trustee from seeking clawback of the IOLTA accounts within the "Other Accounts" definition, Trustee's definition of "Other Accounts" also includes an account for the CJCP Trust, the Estate Management Account, and the Money Market Account. There is no rule that the Court cannot separate the claims within Trustee's definition in its First Amended Complaint. Evaluating Trustee's definition of Other Accounts, the aforementioned CJCP Trust/Estate Management/Money Market Accounts within the "Other Accounts" definition are not precluded by *Armstrong*.

*f.  Setoff is Not a Security Interest or a Lien*

Defendant also argues that it has a right to setoff all accounts. In Defendant's view, this means that the accounts cannot be the basis for a fraudulent transfer because the right to setoff operates as a lien through creating a security interest. (ECF No. 20 at 23). Trustee counters that a right to setoff "is not a lien or security interest" and the Texas Supreme Court has explained that setoff in a banking context is called a "banker's lien" but is ultimately not a security interest. (ECF No. 29 at 16–17). Other Texas bankruptcy courts have explained that the "right to setoff is not the equivalent of a security interest or lien." ***Quisenberry v. Am. State Bank (In re Quisenberry)***, 295 B.R. 855, 858 (Bankr. N.D. Tex. 2003). The Court agrees with the Trustee in that a right to setoff is not a lien or security interest. Defendant's right of setoff is not itself a security interest or lien.

In sum, the Court finds that only one of the four badges of fraud meet the Rule 9 pleading standard. Notably, the surviving badge of fraud is insolvency, which as explained herein, is not a sufficient basis to survive a Rule 12(b) pleading standard. Finally, in line with the ***Tow*** case, the Court notes that the defects in the First Amended Complaint are "incurable." ***Tow***, 498 B.R. at 765. The Court asked Trustee's counsel whether further detail could be included and if amendment was possible, to which counsel stated, "no." Trustee was also previously granted leave to amend by agreement. As such, based on the Court's analysis in this Order, Plaintiff's First Amended Complaint is **DISMISSED WITH PREJUDICE**.

<u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Trustee's First Amended Complaint is **DISMISSED WITH PREJUDICE**.

# # #